UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 501, a labor organization,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DREYER'S GRAND ICE CREAM, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | No. 1:24-cv-00230-KES-CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Docs. 13, 14 |

Plaintiff International Union of Operating Engineers, Local 501 (the "Union") moves to compel arbitration, and defendant Dreyer's Grand Ice Cream, Inc. ("Dreyer's") moves for summary judgment. Docs. 13, 14. The sole issue presented in the motions is whether the Court should order the parties to arbitrate a grievance where the grievance arose during the period covered by the parties' collective bargaining agreement, but the Union submitted the grievance after the expiration of the collective bargaining agreement. *See id.* For the reasons set forth below, the Court grants the Union's motion to compel arbitration and denies Dreyer's motion for summary judgment.

///

///

### I. Background[1]

On March 29, 2020, the Union and Dreyer's entered into a collective bargaining agreement (the "CBA") that governed the terms and conditions of employment for members of the Union who worked at Dreyer's facility in Bakersfield, California. Doc. 16-1 ("Resp. UF") ¶¶ 2, 4. The CBA entered into effect on March 29, 2020, and expired on March 28, 2023. *Id.* ¶¶ 4, 10. Under the terms of the CBA, the Union was the exclusive bargaining representative for its members. *Id.* ¶ 2. Gilbert Parada is a member of the Union and, prior to his termination, was an employee in Dreyer's Bakersfield production department. *Id.* ¶ 1.

On February 15, 2023, Dreyer's human resources personnel notified Parada that it wished to speak with him regarding a potential violation of company policy. *Id.* ¶ 5. On February 22, 2023, Parada and Gareth Grant, Parada's Union representative, met with Dreyer's human resources personnel regarding the alleged violation. *Id.* ¶ 6. During the meeting, Grant directed Parada to refrain from answering any questions. *Id.* On March 13, 2023, Parada and Grant met with Dreyer's human resources personnel a second time to discuss whether Parada had violated company policy. *Id.* ¶ 7. During the March 13 meeting, Dreyer's human resources personnel presented video evidence that, in January and February 2023, Parada left company property during his work shift. *Id.* ¶ 8. On April 20, 2023, Dreyer's terminated Parada based on his alleged violation of company policy. Doc. 15-1 ("Resp. to Respondent's Separate Stmt.") ¶ 8. The next day, April 21, 2023, Grant filed a grievance on Parada's behalf, contesting the decision by Dreyer's to terminate Parada. *Id.* ¶ 11.

The Union contends that Dreyer's termination of Parada violated article 10, subsection (E) of the CBA. *Id.* ¶ 12. That provision of the CBA reads:

> TIME LIMIT FOR DISCIPLINE: It is understood and agreed that any discipline issued to an employee by the Company's management shall be issued within thirty (30) calendar days following knowledge by the Company of the occurrence.

Doc. 13-4, Ex. 4 ("CBA") at 23.

---

[1] The facts recited in this section are undisputed. *See generally* Doc. 16-1 ("Resp. UF"); Doc. 15-1 ("Resp. to Respondent's Separate Stmt."). While the parties do dispute certain facts, those facts are not material to the pertinent issues and thus are not recited here. *See, e.g.*, Doc. 16-1 ¶ 9.

2

The CBA contains the following grievance procedures:

> The Company and the Union agree to attempt to settle all grievances and disputes as quickly as possible. A grievance shall be defined as a specific dispute between the Company, an employee covered hereby, and the Union arising from an event occurring during the term of this Agreement, involving the interpretation or application of the terms of the Agreement. A grievance may be filed by an employee, the Union, or the Company.
>
> Complaints not involving the interpretation or application of this Agreement shall not be subject to the grievance procedure. . . .
>
> A grievance resulting from discharge may skip Steps 1 and 2 and must be submitted in writing to the HR Manager (or his designate) within ten (10) calendar days of the discharge, [thus proceeding directly to Step 3]. . . .
>
> If the grievance is not resolved in Step 3, the grievance may be referred to arbitration upon written request by either party.

CBA at 24.

On July 5, 2023, Grant requested that the parties arbitrate the grievance, but Dreyer's refused to arbitrate on the grounds that the grievance was filed after the CBA had expired. Resp. UF ¶¶ 13–14.

On December 22, 2023, the Union filed a motion to compel arbitration in Kern County Superior Court. Doc. 2-1. On February 22, 2024, Dreyer's removed the action to this Court. Doc. 2. On October 29, 2024, the Union filed a motion to compel arbitration.[2] Doc. 13 ("MTCA"). The same day, Dreyer's filed a motion for summary judgment, arguing that the Court should not compel the matter to arbitration. *See* Doc. 14. Both parties filed oppositions and replies. Docs. 15, 16, 17, 18.

## II.   Legal Standard

"Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, grants a district court jurisdiction to compel arbitration under a collective bargaining agreement." *Hotel & Rest. Employees, & Bartenders Union, Local 703 v. Williams*, 752 F.2d 1476, 1478 (9th Cir. 1985).

---

[2] The Union styled its motion as a "motion for summary judgment, or in the alternative, to compel arbitration." *See* Doc. 13 at 1. Given that the Union seeks by its motion to have the Court compel the matter to arbitration consistent with the terms of the CBA, the Court construes the Union's motion as a motion to compel arbitration under section 301 of Labor Management Relations Act.

3

The Supreme Court has recognized foundational principles that apply to judicial review of a collective bargaining agreement's arbitration provisions. *AT&T Technologies v. Communications Workers of America* ("*Communications Workers*"), 475 U.S. 643, 648–50 (1986). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* However, there is a "presumption of arbitrability" such that "[an] order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (quoting *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). The presumption of arbitrability for labor disputes is a recognition that "the greater institutional competence of arbitrators in interpreting collective-bargaining agreements furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Communications Workers*, 475 U.S. 643, 650 (internal quotation marks and citations omitted).

In deciding whether the parties have agreed to submit a particular grievance to arbitration, the Court may not evaluate the merits of the grievance. *Id.* The function of the Court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." *United Steelworkers*, 363 U.S. at 567–68.

Courts generally apply the summary judgment standard to factual disputes concerning the existence of a collective bargaining agreement with an arbitration provision. *Cf. Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 303–06 (2010) (explaining that a court's order compelling arbitration under the Labor Management Relations Act is not appropriate until factual disputes about the existence of a collective bargaining agreement are resolved); *see Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration [was] in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement

to arbitrate." (internal quotations omitted)).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

**III.   Discussion**

The sole issue presented in the parties' motions is whether the parties must be compelled to arbitrate the Union's grievance under the terms of the CBA, when the grievance concerns conduct that occurred while the CBA was in effect but the Union filed the grievance after expiration of the CBA. *See* Docs. 13, 14. The Court answers that question in the affirmative, as the dispute arises under the terms of the now-expired CBA.

It is settled law that "expiration of [a] collective bargaining agreement [does] not automatically extinguish [the parties'] duty to arbitrate grievances arising under the agreement." *Operating Eng'rs Local No. 3 v. Newmont Mining Corp.* ("*Newmont*"), 476 F.3d 690, 692–93 (9th Cir. 2007) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 251–52 (1977)). The dispute between the Union and Dreyer's "'arise[s] under the [agreement],' and therefore subjects the parties to arbitration, if (1) 'it involves facts

1    and occurrences that arose before expiration,' (2) 'an action taken after expiration infringes a

2    right that accrued or vested under the agreement,' or (3) 'under normal principles of contract

3    interpretation, the disputed contractual right survives expiration of the remainder of the

4    agreement.'" *Id.* at 693 (quoting *Litton Fin. Printing Div., Inc. v. NLRB,* 501 U.S. 190, 206

5    (1991)).

6          The Union contends that the dispute at hand arises under the contract because it involves

7    facts and occurrences that arose before the CBA's expiration on March 28, 2023. Doc. 13-1 at 9.

8    The Court agrees. As the *Newmont* court explained, "the determinative issue is not necessarily

9    the relative importance of the facts that took place before the CBA's expiration, but whether [the

10   pre-expiration] facts and the dispute over them is one that the parties agreed to arbitrate. Although

11   the pre-expiration facts or occurrences to be arbitrated must be of *some* significance in the

12   dispute, the dispute must be arbitrated if the parties agreed to arbitrate those facts or occurrences."

13   *Newmont*, 476 F.3d at 693.

14         The pertinent terms of the CBA are as follows. The CBA permitted Dreyer's to

15   "discipline or discharge employees for just cause." CBA at 14. Article 10, subsection (E) of the

16   CBA provided that "any discipline issued to an employee by the Company's management shall be

17   issued within thirty (30) calendar days following knowledge by the Company of the occurrence."

18   CBA at 23. The CBA then set out a grievance procedure and defined "grievance . . . as a specific

19   dispute between the Company, an employee covered hereby, and the Union arising from an event

20   occurring during the term of this Agreement, involving the interpretation or application of the

21   terms of the Agreement." CBA at 24. The CBA also provided that the term "grievance" included

22   a "grievance resulting from discharge." *Id.* The parties agreed to submit to arbitration grievances

23   that could not be resolved internally. *Id.*

24         The Union's April 21, 2023, grievance involves "the interpretation or application of the

25   terms of the Agreement" to "an event occurring during the term of th[e] Agreement": The entire

26   basis of the grievance is whether Dreyer's violated article 10, subsection (E) of the CBA, which

27   set a thirty-day time limit for discipline, by terminating Parada more than thirty days after

28   learning of his violation of company policy. *See* Doc. 13-5 at 3–4. Dreyer's had learned of

1  Parada's violation by February 15, 2023, and the CBA was still in effect thirty days later when,
2  the Union contends, the time limit for any discipline lapsed. *Id.*; Resp. UF ¶ 5. As the Union's
3  grievance involves the interpretation of the CBA to an event occurring during the term of the
4  CBA, the Union and Dreyer's agreed to arbitrate the dispute identified in the grievance.

5      Dreyer's argues that the temporal focal point should be its April 20, 2023, termination of
6  Parada, and that, since the termination occurred after expiration of the CBA, the Union's
7  grievance concerning the termination is not governed by the CBA. *See* Doc. 16 at 9–13. The
8  *Newmont* court rejected this exact argument, recognizing that when the "conduct leading up to" a
9  "post-expiration termination" occurs "prior to the expiration of the CBA," the matter must be
10 arbitrated. *Newmont*, 476 F.3d at 694. Here, the conduct leading up to the post-expiration
11 termination includes Dreyer's discovery of Parada's violation of company policy and the passage
12 of thirty days following Dreyer's discovery, which occurred before the CBA's expiration. As in
13 *Newmont*, "those facts and the dispute over them is one that the parties agreed to arbitrate." *Id.* at
14 693. The fact that Dreyer's did not actually terminate Parada until the CBA had expired is not
15 controlling, for "arbitration must proceed even if it may take account of, and have some impact
16 on, events that occurred after expiration of the CBA." *Id.* at 693–94.

17     Dreyer's also argues that the grievance is not governed by the CBA because the grievance
18 does not take issue with whether Parada violated company policy and, according to Dreyer's, the
19 Union's motion "disingenuously contends that" it does. Doc. 16 at 7–9; *see* Doc. 14 at 11.
20 However, Dreyer's acknowledges that the Union's grievance concerns whether the termination of
21 Parada violated article 10, subsection (E) of the CBA. *See id.* As explained above, the facts and
22 occurrences giving rise to that dispute are matters that must be arbitrated.

23     In conclusion, the parties agreed to arbitrate "the interpretation or application of the terms
24 of the" CBA to "an event occurring during the term of" the CBA. CBA at 24. After Dreyer's
25 learned of Parada's violation, more than thirty days passed before the CBA expired; these facts
26 form the basis of the Union's contention that Dreyer's later termination of Parada violated the
27 thirty-day time limit in the CBA. "[W]hatever the outcome, the resolution of [the Union's
28 grievance] hinges on the interpretation ultimately given the contract clause providing for [a thirty-

day time limit]. The dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract." *Nolde Bros.,* 430 U.S. at 249.

## IV. Conclusion and Order

Accordingly, the Union's motion to compel arbitration is GRANTED, and Dreyer's motion for summary judgment is DENIED. The Court ORDERS the parties to submit this matter to arbitration in accordance with the CBA. Because the Court finds that this dispute is subject to arbitration, the Court STAYS this action pending the resolution of the arbitration. The parties are directed to notify the Court within fourteen (14) days of the completion of the arbitration.

IT IS SO ORDERED.

Dated:   March 27, 2025

_____
UNITED STATES DISTRICT JUDGE